## UNITED STATES *v.* BOSTON & MAINE RAILROAD ET AL.

No. 232. Argued January 21, 1965.—Decided March 8, 1965.

*Robert B. Hummel* argued the cause for the United States. With him on the briefs were *Solicitor General Cox, Assistant Attorney General Orrick* and *John H. Dougherty.*

*Edward O. Proctor, Sr.,* argued the cause for appellees. On the brief for appellee Boston & Maine Railroad was *Edward B. Hanify.* With *Mr. Proctor* on the brief for appellees McGinnis et al. were *William T. Griffin, Lothrop Withington* and *John M. Reed.*

158

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a direct appeal under the Criminal Appeals Act, 18 U. S. C. § 3731, from the District Court's order dismissing Count I of an indictment (225 F. Supp. 577) for failure to state an offense under § 10 of the Clayton Act, 38 Stat. 734, 15 U. S. C. § 20. That section provides in relevant part:

> "No common carrier engaged in commerce shall have any dealings in securities, supplies, or other articles of commerce, or shall make or have any contracts for construction or maintenance of any kind, to the amount of more than $50,000, in the aggregate, in any one year, with another corporation, firm, partnership, or association when the said common carrier shall have upon its board of directors or as its president, manager, or as its purchasing or selling officer, or agent in the particular transaction, any person who is at the same time a director, manager, or purchasing or selling officer of, or *who has any substantial interest in, such other corporation,* firm, partnership, or association, unless and except such purchases shall be made from, or such dealings shall be with, the bidder whose bid is the most favorable to such common carrier, to be ascertained by competitive bidding under regulations to be prescribed by rule or otherwise by the Interstate Commerce Commission. . . ." (Italics added.)

Count I charged that appellee railroad and the three other appellees, officers of the railroad, violated § 10 by the road's sale on August 14, 1958, of 10 coaches valued in excess of $50,000 to the International Railway Equipment Corp. in which the three officers had "a substantial interest," competitive bidding not having been used. That count charged that appellee McGinnis knowingly voted

for the sale and that all three appellee officers knowingly directed the act. A bill of particulars [1] described the "substantial interest" of those officers in the purchasing corporation as follows:

> "The substantial interest of defendants McGinnis and Glacy in defendant International consisted of an understanding, agreement, relationship, arrangement and concert of action among the said defendants McGinnis, Glacy, and International, and others, for, among other things, the purpose of producing profits for International from dealings by it in property acquired from the B&M through the intervention, direction or assistance of defendants McGinnis, Glacy, and Benson, and pursuant to which defendants McGinnis, Glacy, and Benson were to and did receive substantial monies."

The District Court held:

> "The statute is limited to one who has a then present legal interest in the buying corporation and does not include one whose only interest is in the outcome of what may have been an illegal and illicit plan to siphon off for his personal benefit property of the Boston and Maine Railroad through the medium of International." 225 F. Supp., at 578.

---

[1] This case was decided below and argued here on the assumption that, although the indictment itself was sufficient against a motion to dismiss, it became insufficient for that purpose by reason of the bill of particulars. We have held, however, that "the bill of particulars . . . forms no part of the record *for the purposes of the demurrer."* *United States* v. *Comyns,* 248 U. S. 349, 353 (emphasis supplied); *Dunlop* v. *United States,* 165 U. S. 486. Since the parties have made no attempt to invoke this rule at any stage in this proceeding, we are not required to express any view as to whether this rule for demurrers is applicable on motions to dismiss under Rule 12, Fed. Rules Crim. Proc.

A criminal statute is to be construed strictly, not loosely. Such are the teachings of our cases from *United States* v. *Wiltberger,* 5 Wheat. 76, down to this day. Chief Justice Marshall said in that case:

> "The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department." *Id.,* p. 95.

The fact that a particular activity may be within the same general classification and policy of those covered does not necessarily bring it within the ambit of the criminal prohibition. *United States* v. *Weitzel,* 246 U. S. 533.

What is the reach of § 10? It is not strictly a conflict of interest statute such as we dealt with in *United States* v. *Mississippi Valley Co.,* 364 U. S. 520. In *Minneapolis & St. Louis R. Co.* v. *United States,* 361 U. S. 173, 190, we described § 10 as "an antitrust law."

Section 10, indeed, has its roots in President Wilson's message to Congress of January 20, 1914, on the subject of "trusts," in which he denounced the abuses of "interlockings of the *personnel* of the directorates of great corporations." 51 Cong. Rec. 1962–1964; H. R. Rep. No. 627, 63d Cong., 2d Sess., pp. 17–18. Section 10 started as part of § 9 of the House bill and forbade certain types of interlocking office-holding. See S. Doc. No. 584, 63d Cong., 2d Sess., p. 10. The Senate made two main changes. First, it did not prohibit interlocking office-holding but seized rather on competitive bidding as the control. S. Rep. No. 698, 63d Cong., 2d Sess., pp. 47–48. Second, the Senate required competitive bidding not only when a director or other officer or agent of a common carrier was also a director or other officer of any firm with which the carrier had dealings to the amount of more than

$50,000 in any one year, but also when the director or other officer of a common carrier had "any direct or indirect interest in" the other firm. S. Doc. No. 584, 63d Cong., 2d Sess., p. 13. The Conference changed the phrase "any direct or indirect interest in" to the present wording "any substantial interest in." *Id.*, pp. 13–14. As Senator Chilton, one of the Conferees, reported:

> ". . . It not only prevents corporations which are interlocked by officers and directors, but it says: 'Or who has any substantial interest in such of them.'
>
> "The Senator will recall all we had before us, the ease by which interlocking directorates could be gotten around; in other words, you could have your son, or your cousin, or your lawyer, or your agent upon the corporation and accomplish the same thing as if you were on the board yourself. . . .
>
> .        .        .        .        .
>
> ". . . They can not dodge it by having a supply company, and even though they have discarded the form of interlocking directors, if there be the interest of the railroad or the common carrier in the supply company, as the Senator chooses to call it, then it is prohibited." 51 Cong. Rec. 15943.

As we have seen, Count I charges a "transaction" to sell 10 coaches to International, and the bill of particulars suggests that it was agreed that the three individual appellees would receive "substantial monies" for their part in effecting the sale. It is earnestly urged that since those appellees stood to profit from the deal with International, they had a "substantial interest in" International within the meaning of § 10. It is pointed out that the railroad scandals of that age were not limited to interlocking directorates and multiple shareholding, but that suppliers of railroad materials had made substantial gifts to the railroad officials with whom they dealt. See *In re Financial Transactions of the New York,*

*N. H. & H. R. Co.*, 31 I. C. C. 32.[2]   But we are confined by the words that Congress used in § 10.   If the rule of strict construction is to be followed, the words "substantial interest in," as used in § 10, presuppose either an existing investment of some kind in International, or the creation of International by the three individual appellees for their use, or a joint venture or continued course of dealings, licit or illicit, with International for profit sharing.   But it is doubtful that this indictment, as illuminated by the bill of particulars, alleges anything more in substance than a bribe.   Bribery might well be in the family of offenses covered under a conflict of interest statute.   But it is more remote from an antitrust frame of reference.   While history shows a rather wide pattern of railroad misconduct leading to § 10, that section is a rather narrow prohibition applicable to activity that is conceptually within the antitrust philosophy. We cannot broaden it to include the present case, unless we attribute to Congress a purpose to make it a more general panacea for conflict of interest activities; but neither do we take the same narrow view of the statute as the District Court.

Since the Government may choose to file, and the District Court may choose to allow, an amended bill of particulars,[3] we vacate and remand the case, leaving open all questions except our construction of the statute.

*Vacated and remanded.*

---

[2] The Commission reported: "Purchases of cars and coal are two large expenditures that railroads make.   The New Haven purchased cars almost exclusively from James B. Brady without competition and to the extent of some $37,000,000.   Mr. Brady, as a witness, made no secret of his generosity to the officials with whom he had business.   His methods were justified by him on the ground that the officers of the New Haven were old friends."   31 I. C. C., at 61.

[3] Rule 7 (f) of the Rules of Criminal Procedure provides, "A bill of particulars may be amended at any time subject to such conditions as justice requires."