MAIN, Judge.
D.A.D.O., a juvenile, was adjudicated delinquent based upon a charge of obstructing governmental operations, a violation of § 13A-10-2, Ala.Code 1975. The juvenile court placed D.A.D.O. on probation. This appeal follows.
The State’s evidence tended to show the following: On October 28, 2008, Officer Willie Willis of the Birmingham Police Department arrested three juveniles for violating a daytime curfew ordinance. Pursuant to departmental procedure, Officer Willis took the three violators to the main office of Jaekson-Olin High School, where they were enrolled, seeking information to identify them, because they had provided false information to him; to contact their parents or legal custodians informing them of their arrest; and to obtain accurate information to complete the curfew-violation tickets and arrest reports. Several people, including D.A.D.O., were in the main office when Officer Willis arrived with the three curfew violators. Officer Willis walked over and asked a staff member at the high school to obtain the necessary information from the curfew violators for him. D.A.D.O. began talking to the curfew violators, which made it difficult for the staff member to get information from them because they were talking to D.A.D.O. instead of the staff member. Officer Willis observed that the curfew violators “were getting louder, laughing.” (R. 8.) Officer Willis instructed D.A.D.O. to leave the curfew violators alone. D.A.D.O. replied that they are not “prisoners” and continued to talk to them. (R. 8-9.) Officer Willis asked D.A.D.O. at least three times to stop talking to the curfew violators. Officer Willis ultimately asked D.A.D.O. to leave the office, and he complied. As D.A.D.O. left, “he yelled loud at me real loud and boisterous, [‘]man, you don’t tell me what to do. I can talk to *801 them anytime I want to. I don’t like the way you’re talking to me.[’]” (R. 9.) Officer Willis then arrested D.A.D.O. After he arrested D.A.D.O., Officer Willis obtained the information that he needed on the three curfew violators from the staff member.
At the conclusion of the hearing on November 19, 2008, the judge found the charge to be true and reserved disposition as follows:
“[THE COURT]: The Court finds that [D.A.D.O.] did obstruct government operations when he spoke out that these folks are not prisoners, they are not pi’isoners. The Court does specifically find that physical interference does reach to — does involve, you know, bodily contact or activity, an activity that is verbal or physical abuse. And — so, we do find the charge true.
[[Image here]]
“[THE COURT]: Based on the testimony here at trial, the charge is found true. Disposition of the matter is reserved .... ”
(R. 30-32.)
Initially, we note that the State argues that D.A.D.O.’s appeal is untimely. An appeal from a final order or judgment of a juvenile court is timely if “filed within 14 days of the date of the entry of order or judgment appealed from .... ” Rule 28(C), Ala.R.Juv.P.; Rule 4(a)(1)(E), Ala. R.App.P. (“[T]he notice of appeal shall be filed within 14 days (2 weeks) of the date of the entry of ... any final order or judgment issued by a juvenile court.”). Further, a juvenile court may enter disposition immediately after making a “true” finding at the close of the hearing or may instead continue disposition to a later date. Rule 25(A)(1), Ala.R.Juv.P.; see § 12-15-65(d)-(f), Ala.Code 1975. After the juvenile court finds allegations of the petition seeking an adjudication of delinquency true, the juvenile remains subject to the orders of the juvenile court pending the dispositional phase. Rule 25(B), Ala. R.Juv.P.; see § 12-15-65(e), Ala.Code 1975. Then, at the close of the dispositional stage, the court makes its finding by making a docket entry or entering a written order. Rule 25(D), Ala.R.Juv.P. A.juvenile court does not enter judgment from which an appeal can be taken until the time of disposition. See § 12-15-71 (c), Ala.Code 1975 (setting forth dispositional options); Rule 25(A)-(D), Ala.R.Juv.P.; Rule 28, Ala.R.Juv.P.
In this case, following the hearing on November 19, 2008, the juvenile court found the allegations of the petition to be true, although not specifically providing that it adjudicated D.A.D.O. delinquent, and it reserved disposition until December 10, 2008 (C. 14), when the juvenile court placed D.A.D.O. on probation based on the terms set forth in another juvenile case involving D.A.D.O. (C. 17.) The notice of appeal was filed on December 17, 2008 (C. 23), within 14 days of the entry of the final order or judgment. Therefore, the appeal in this case was timely filed.
D.A.D.O. contends that the adjudication of delinquency should be reversed because, D.A.D.O. says, the juvenile court misinterpreted § 13A-10-2, Ala.Code 1975. Specifically, D.A.D.O. argues that his oral conduct did not constitute interference under § 13A-10-2, Ala.Code 1975, because, he claims, a correct reading of the statute requires physical interference and his actions did not amount to physical interference. The juvenile court found that D.A.D.O. obstructed government operations when he perceived that the three curfew violators were not “prisoners” and that this conduct rose to the level of physical'interference. This Court is properly presented with the issues whether § 13A-10-2 requires “physical” interference be *802 cause the word “physical” modifies both “force” and “interference” in the statute and what actions rise to the level of “physical” interference.
The delinquency petition alleged, in pertinent part, that: “[D.A.D.O.] did, by means of interference intentionally obstruct, impair or hinder the administration of the Birmingham City Police: to-wit: by engaging arrested juveniles in conversation thus hindering Birmingham Police and school administration from gathering essential personal information for parent notification in violation of Section 13A-10-2 of the Code of Alabama, 1975.” (C. 3.) Section 13A-10-2, Ala.Code 1975, provides, in pertinent part:
“(a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:
“(1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or
“(2) Intentionally prevents a public servant from performing a governmental function.”
As this Court explained in Carroll v. State, 599 So.2d 1253 (Ala.Crim.App.1992), aff'd, 627 So.2d 874 (Ala.1993):
■ “ ‘Where, as here, this Court is called upon to construe a statute, the fundamental rule is that the court has a duty to ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained.’ Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985). ‘[T]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.... In construing the statute, this Court should gather the intent of the legislature from the language of the statute itself, if possible .... We may also look to the reason and necessity for the statute and the purpose sought to be obtained by enacting the statute.’ Pace v. Armstrong World Industries, Inc., 578 So.2d 281, 283 (Ala.1991). ‘If possible, the intent of the legislature should be gathered from the language of the statute itself. However, if the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another.’ Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991).
“ ‘[A]mbiguous criminal statutes must be narrowly interpreted, in favor of the accused.’ United States v. Herring, 933 F.2d 932, 937 (11th Cir.1991). ‘[I]t is well established that criminal statutes should not be “extended by construction.” ’ Ex parte Evers, 434 So.2d 813, 817 (Ala.1983). ‘ “[Cjriminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed.” ’ United States v. Bridges, 493 F.2d 918, 922 (5th Cir.1974).
“ ‘In United States v. Boston & M. RR Co., 380 U.S. 157, 85 S.Ct. 868, 870, 13 L.Ed.2d 728 (1965), the Supreme Court stated:
“ ‘ “A criminal statute is to be construed strictly, not loosely. Such are the teachings of our cases from United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37 [ (1820) ], down to this day. Chief Justice Marshall said in that case:
“ ‘ “ ‘The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of *803 individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.’ Id., p. 95.
“ ‘ “The fact that a particular activity may be within the same general classification and policy of those covered does not necessarily bring it within the ambit of the criminal prohibition. United States v. Weitzel, 246 U.S. 583, 38 S.Ct. 381, 62 L.Ed. 872 [ (1918) ].”
“ ‘Moreover, “one ‘is not to be subjected to a penalty unless the words of the statute plainly impose it,’ Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 [ (1905) ]. ‘[WJhen choice has to be made between' two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.’ United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221-222, 73 S.Ct. 227, 229-230, 97 L.Ed. 260 [ (1952) ].” United States v. Campos-Serrano, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971).’
“Bridges, 493 F.2d at 923.
“ “Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning.’ Alabama Farm Bureau Mut. Casualty Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). The general rule of construction for the provisions of the Alabama Criminal Code is found in Ala. Code 1975, § 13A-1-6: ‘All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in section 13A-1-3.’ Among the purposes stated in § 13A-l-[3] is that found in subsection (2): ‘To give fair warning of the nature of the conduct proscribed.’ ”
599 So.2d at 1264-65.
In Ex parte Bertram, 884 So.2d 889 (Ala.2003), the Alabama Supreme Court, in construing a criminal statute, stated, in part:
“ ‘ “[I]t is well established that criminal statutes should not be ‘extended by construction.’ ” ’ Ex parte Mutrie, 658 So.2d 347, 349 (Ala.1993) (quoting Ex parte Evers, 434 So.2d 813, 817 (Ala.1983), quoting in turn Locklear v. State, 50 Ala.App. 679, 282 So.2d 116 (1973)).
“ ‘A basic rule of review in criminal cases is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation, i.e., defendants. Schenher v. State, 38 Ala.App. 573, 90 So.2d 234; cert. denied, 265 Ala. 700, 90 So.2d 238 (1956).
“‘Penal statutes are to reach no further in meaning than their words. Fuller v. State, 257 Ala, 502, 60 So.2d 202 (1952).
“ ‘One who commits an act which does not come within the words of a criminal statute, according to the general and popular understanding of those words, when they are not used technically, is not to be punished thereunder, merely because the act may contravene the policy of the statute. Fuller v. State, supra, citing [Young v. State ], 58 Ala. 358 (1877).
“‘No person is to be made-subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused. Fuller v. State, supra.’
“Clements v. State, 370 So.2d 723, 725 (Ala.1979) (quoted in whole or in part in Ex parte Murry, 455 So.2d 72, 76 (Ala. *804 1984), and in Ex parte Walls, 711 So.2d 490, 494 (Ala.1997)) (emphasis added).
“ ‘ “Statutes creating crimes are to be strictly construed in favor of the accused; they may not be held to apply to cases not covered by the words used .... ” United States v. Resnick, 299 U.S. 207, 209, 57 S.Ct. 126, 127, 81 L.Ed. 127 (1936). See also, Ex parte Evers, 434 So.2d 813, 816 (Ala.1983); Fuller v. State, 257 Ala. 502, 60 So.2d 202, 205 (1952).’
“Ex parte Jackson, 614 So.2d 405, 406 (Ala.1993) (emphasis added). ‘[T]he fundamental rule [is] that criminal statutes are constmed strictly against the State. See Ex parte Jackson, 614 So.2d 405 (Ala.1993).’ Ex. parte Hyde, 778 So.2d 237, 239 n. 2 (Ala.2000) (emphasis added). The ‘rule of lenity requires that “ambiguous criminal statute[s] ... be construed in favor of the accused.” ’ Castillo v. United States, 530 U.S. 120, 131, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000) (paraphrasing Staples v. United States, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)).”
884 So.2d at 891-92. Moreover, “the law favors rational and sensible construction,” and “[i]n construing statutes,’ courts are not required to abandon common sense.” Hankins v. State, 989 So.2d 610, 618 (Ala.Crim.App.2007).
The Commentary to § 13A-10-2 provides some insight to the legislative intent. Alabama’s codification of the offense of obstructing governmental operations was “taken from New York Revised Penal Law § 195.05, and is designed to deal generally with the intentional obstruction of governmental activities.” § 13A-10-2, Commentary. Further, the Commentary provides that § 13A-10-2 is “a back-stop offense to other sections of the Criminal Code which deal with particular methods of interfering with governmental administration.” Id. However, § 13A-10-2 is not intended to be an “overly broad catchall.” Id. Instead, the Commentary instructs that § 13A-10-2 requires that the obstruction be the result of (1) intimidation, (2) physical force or interference, or (3) any. other independently unlawful act.
The New York statute the Alabama codification was based upon provides in pertinent part:
“A person is guilty of .obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act .... ”
N.Y. Penal Law § 195.05 (McKinney 1999). The' New York Court of Appeals first addressed under the New York obstruction-of-governmental-aetivities statute whether “physical” modified both “force” and “interference” in the case of People v. Case, 42 N.Y.2d 98, 396 N.Y.S.2d 841, 365 N.E.2d 872 (1977).
In People v. Case, the defendant was charged with obstructing governmental administration for alerting another motorist via a citizens band radio that there was a radar speed checkpoint up ahead. The New York Court of Appeals, focusing on the language of the statute that proscribes only obstruction “by means of ... physical force or interference,” held that “physical” modifies both “force” and “interference” and that “mere words alone do not constitute ‘physical force or interference’ such as to support the charge of obstructing governmental administration.” 42 N.Y.2d. at 102, 396 N.Y.S.2d at 843, 365 N.E.2d at 875. In interpreting the New York statute, the New York Court of Appeals stated:
*805 “A fair reading of this section can yield but one conclusion. The operative obstruction may be accomplished ‘by means of intimidation, physical force or interference, or by means of any independently unlawful act.’ If it be ‘interference’, then it must be physical interference, as ‘physical’ modifies ‘interference’ in the statute. The word ‘interference’ is not cast in isolation, it is part of the phrase ‘physical force or interference’, a phrase separated from the rest of the sentence by comma punctuation. The disjunctive ‘or’ in said phrase joins ‘force’ and ‘interference’ and is distinct from the ‘or’ following the word ‘interference’, which latter disjunctive is placed before the last in the series of the obstructive means. It simply makes no sense to read ‘interference’ in solitary, apart from its modifier ‘physical’, for by so doing the reader must of necessity disregard the punctuated structure of the statute,”
42 N.Y.2d. at 101, 396 N.Y.S.2d at 843, 365 N.E.2d at 874.
Several cases decided after People v. Case, supra, found the certain actions amounted to more than words alone. For example, in In re Davan L., 91 N.Y.2d 88, 666 N.Y.S.2d 1015, 689 N.E.2d 909 (1997), a juvenile was charged with obstructing governmental administration for interfering in a narcotics buy operation. In that case, the juvenile was circling the block on a bicycle near the location of the operation. A plain-clothes officer displayed a badge to the juvenile and told him not to get involved and to leave the location. Instead, the juvenile turned around, entered the “identified zone” and yelled, “ ‘[C]ops, cops ... watch out, five-0, police are coming.’ ” 91 N.Y.2d. at 90, 666 N.Y.S.2d at 1016, 689 N.E.2d at 910. Distinguishing the facts from Case, the New York Court found that the actions of the juvenile were more than “mere words” and would constitute the crime of obstructing governmental administration. In so holding, the New York Court stated:
“The' police activity area was confined and defined, and the juvenile was put on specific, direct notice. There was evidence that he intentionally intruded himself into the specific area of police áctivity and directed his warnings toward a known criminal activity and assembly at the location identified to the juvenile by the police officer.
“There was also evidence that the juvenile caused a physical reaction and dispersal, escalating his conduct into an even more serious physical obstruction of governmental administration, under a plain reading and application of Penal Law § 195.05. A rational factfinder could conclude that he placed his own safety, as well as the safety of the officers and others in the public, at risk, and consequently interfered with and obstructed law enforcement administration.”
91 N.Y.2d. at 91, 666 N.Y.S.2d at 1017, 689 N.E.2d at 911. In People v. Yarborough, 19 Misc.3d 520, 852 N.Y.S.2d 751 (Sup.Ct.2008), the information charging the defendant under N.Y. Penal Law § 195.05 was sufficient where the defendant was placed on notice to move away from an officer, yet the defendant intentionally intruded himself into the specific area of police activity and directed his warnings to the same unapprehended individuals the officer was attempting to approach to investigate the alleged assault in progress. In People v. Covington, 18 A.D.3d 65, 793 N.Y.S.2d 384 (2005), the defendant’s conviction under N.Y. Penal Law § 195.05 was affirmed based upon his interference with police activity at the scene of a narcotics raid by yelling “the pqlice are coming.” , In People v. Romeo, 9 A.D.3d 744, 779 N.Y.S.2d 860 *806 (2004), the defendant was belligerent, uncooperative, and refused several direct requests that he stop approaching the officers and stay away as they attempted to subdue and arrest his girlfriend. The evidence was held sufficient to establish the crime of obstructing governmental administration because the court noted that the interference required to establish the crime “‘includes “inappropriate and disruptive conduct at the scene of the performance of an official function” ’ ” 9 A.D.3d at 745, 779 N.Y.S.2d at 861 (quoting other cases), ‘“even if there is no physical force involved,’ ” 9 A.D.3d at 745, 779 N.Y.S.2d at 862 (quoting and citing other cases). Further, in juvenile cases where the New York courts have held evidence sufficient for the crime of obstructing governmental administration, the juveniles’ refusal to comply ..with government officials was coupled with some other action, while not necessarily involving physical force, but rising to the level of being physical in nature. See Case, supra.[1]
The present facts are distinguishable from In re Davan L., supra, and its progeny. Here, the officer was engaged in authorized conduct; however, D.A.D.O.’s verbal outbursts were not coupled with conduct sufficient to be considered physical in nature. D.A.D.O. at no time made any physical movement, threat, or motion of violence, and his feelings were expressed only in words. Further, once the officer requested .that D.A.D.O. leave the office, he complied, and the officer was able to obtain the information that he needed on the three curfew violators.
We hold that § 13A-10-2 does require that the interference be physical interference and that words alone fail to provide culpability under § 13A-10-2. Under the express provisions of the statute, the interference would' have to be, in part at least, physical in nature. To otherwise interpret and apply § 13A-10-2, Ala.Code' 1975, would mean that there would be no outer limits to the statute and would contradict the legislative intent.
In this case, although the trial court correctly interpreted the statute to require that the interference be physical in nature, the trial court found that D.A.D.O’s conduct rose to the level of being physical in *807 nature. Based on the facts of this case, D.A.D.O.’s oral outbursts were words alone rather than words coupled with actions sufficient to amount to physical interference pursuant to § 13A-10-2, Ala.Code 1975. Cf. A.A.G. v. State, 668 So.2d 122 (Ala.Cr.App.1995) (evidence sufficient to establish obstructing governmental operations where officers responded to reported activation of burglar alarm, knocked on front door and identified themselves to juvenile, who delayed opening door and ran through house screaming and flailing her arms at officers and struck one of the officers several times, interfering with their ability to inspect house for possible burglar). Accordingly, the judgment of the juvenile court is reversed and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, J., concurs.
KELLUM, J., concurs in the result.
WISE, P.J., dissents, with opinion, joined by WINDOM, J.

. In re Joe R., 44 A.D.3d 376, 843 N.Y.S.2d 58 (2007) (evidence held sufficient in juvenile-delinquency adjudication where school-safety agent attempted to bring juvenile to principal’s office, juvenile refused to comply and physically struggled with agent, causing her to fall and hit her head on floor); In re Ismaila M., 34 A.D.3d 373, 827 N.Y.S.2d 7 (2006) (evidence held sufficient in juvenile-delinquency adjudication where juvenile caused a disturbance in a school cafeteria, refused to comply with a school-safety officer's directives to sit down, screamed, cursed, flailed his arms, and struggled with the officer, causing her to sprain her wrist as she attempted to remove him from the cafeteria and escort him to the principal's office); In re Quaniqua W., 25 A.D.3d 380, 807 N.Y.S.2d 83 (2006) (evidence held sufficient in juvenile-delinquency adjudication where juvenile refused to comply with officers’ directives to leave the station, screamed, cursed, flailed her arms, and struggled with officers, who were attempting to maintain order in the station); In re Joshua C., 289 A.D.2d 1095, 735 N.Y.S.2d 324 (2001) (evidence held sufficient in juvenile-delinquency adjudication where sheriff's deputies arrived at scene of a domestic dispute between juvenile's parents and directed him to leave the scene; juvenile refused to leave and instead continued his disruptive behavior, and even continued his disruptive behavior after a deputy removed juvenile’s father to his patrol vehicle and transported him to another location in order to complete the investigation without interference); In re Carlos G., 215 A.D.2d 165, 626 N.Y.S.2d 137 (1995) (juvenile-delinquency petition charging obstructing governmental administration, which alleged that a youth punched an officer and yelled obscenities while the officers were attempting to arrest his mother, held sufficient).