**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Phillip Wayne BRIDGES et al.,**
**Defendants-Appellants.**

No. 73–3045.

United States Court of Appeals,
Fifth Circuit.

May 6, 1974.

---

Wesley R. Asinof, Atlanta, Ga., for defendants-appellants.

Ira DeMent, U. S. Atty., David B. Byrne, Jr., Wade B. Perry, Asst. U. S. Attys., Montgomery, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

From mid-August 1972 until November 9, 1972, four of the appellants (Bridges, Brogdon, Butler and Gilbert) operated a gambling establishment located just outside Dothan, Alabama. Gambling, consisting primarily of poker playing and crapshooting, took place during this period of time on approximately two nights a week. The fifth appellant, Sammy K. Register, became involved no earlier than October 24, 1972. All five were arrested on November 9, 1972, and were subsequently convicted in a trial to the court of violating 18 U.S.C. § 1955(a).[1] On appeal the issue is whether appellants were engaged in a federally proscribed "illegal gambling business" as defined by § 1955(b)(1). We hold that the gambling activity in the case at bar did not violate § 1955(a), because five persons were not involved in the business for a period in excess of thirty days as required by § 1955(b)(1)(ii) and (iii). The convictions are accordingly reversed.

## I.

Enacted as a part of Title VIII of the Organized Crime Control Act of 1970, 18 U.S.C. § 1955 makes it a federal crime for one to conduct an illegal gambling business, which is defined as follows:

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

18 U.S.C. § 1955(b)(1).[2] Appellants admit that their activity was violative of Alabama law. Also conceded is that the enterprise was in operation for a period in excess of thirty days. But because Register—the fifth man—was involved for no longer than eighteen days, appellants contend that their activity does not come within the class of gambling businesses prohibited by § 1955. For a

---

1. "(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both."

2. This same definition appears in 18 U.S.C. § 1511, which makes it "unlawful for two or more persons to conspire to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, with the intent to facilitate an illegal gambling business . . . ."; this section was also a part of Title VIII of the Organized Crime Control Act of 1970.

gambling business to be an illegal gambling business as defined by § 1955(b)(1), it must, appellants argue, be conducted by a minimum of five persons for a period in excess of thirty days. If the statute is construed in this manner, the facts here would not establish a violation of federal law.

As expected, the government reads the statute differently. Its position is apparently that, although five persons must be involved at some point in time, the business itself does not have to be conducted by five persons for more than thirty days in order to be illegal under federal law. While agreeing that a gambling business is violative of federal law only if all three elements of § 1955(b)(1) are met, the government does not read these requirements as overlapping or cumulative of each other, but instead considers each as relating only to "a gambling business" as this phrase appears prior to the enumeration of the three requirements.

■ Although it seems to us that the most reasonable construction of the statute is that sought by appellants, the government's position is not definitely precluded by the manner in which the statute is drafted. At best, the definition of "an illegal gambling business" contained in § 1955(b)(1) is susceptible of at least two reasonable, but differing, constructions and is therefore ambiguous.

## II.

The government cites United States v. Smaldone, 485 F.2d 1333, 1351 (10th Cir., 1973), as direct authority for its reading of the statute. The defendants there were involved in a bookmaking operation covering such sporting events as football, basketball and baseball and spanning two time periods—from the fall of 1970 until June 30, 1971, and from the fall of 1971 until the football season ended in January 1972.[3] Evidence produced at trial established that well above the minimum, five persons were active in running the gambling operation. That portion of the opinion relied on by the government reads:

"In order for the government to prove that 18 U.S.C. § 1955 was violated, it was not only necessary to show that there was a gambling operation in violation of state law, but that it was conducted, financed, managed, supervised, directed, or owned by at least five people and that it operated substantially continuously for at least thirty days or had more than $2000 gross revenue in any single day. It was not essential, contrary to appellants' assertions, to establish that each conductor was involved in the gambling business for more than thirty days or generated at least $2000 gross revenue in a single day. These requirements refer to the gambling operation and not to individuals."

*Id.* at 1351. This statement does not resolve the problem in the case at bar because these observations were made in the context of refuting the defendants' arguments that the evidence was insufficient to convict them of violating the statute. Here we are concerned with

---

3. The two time periods were covered by two counts of the indictment. The financial impact of the operation is apparent from the following statement, 485 F.2d at 1342:

"Testimony was . . . offered at trial as to the average dollar volumes in wagers under the two counts. Laningham, testifying as to the count I period, stated that he handled about $45,000 weekly during the 1970 football season, $25,000 weekly for the 1970–71 basketball season and $25,000 weekly for the 1971 baseball season. Phone man Lockwood testified that he averaged $2,000 to $4,000 each weekday and $15,000 on weekends during the count I period. One customer acknowledged placing $15,000 weekly bets during the 1970 football season. As for the count II period, Laningham further testified that he averaged $12,000–$15,000 in wagers each week. Jeremiah Sullivan stated that from August through November 1971 he handled an increasing monetary volume in wagers until he reached an average of $35,000 per week in November. In addition, the records seized pursuant to three search warrants showed that an average of $10,000–$12,000 in wagers was being placed with particular phone men during the count II period."

the gambling operation itself, the question being whether it is within the class Congress sought to regulate by § 1955. This was not the question being considered in *Smaldone* as the court's concluding statement illustrates: "Suffice it to note that the record is replete with evidence showing that a well-organized and widespread gambling operation was being conducted for several years in the Denver area. The direct and circumstantial evidence is sufficient to confirm a link between each appellant and at least four others involved in the gambling business." *Id.*

The appellants in our case have raised a question more basic than whether the evidence was sufficient to convict them of violating § 1955; they assert that the activity in which they were engaged, although illegal under Alabama law, was not a federal offense. Of necessity, this is an underlying issue in all § 1955 prosecutions. To date, however, the precise problem in our case—whether the gambling business must operate with five people for a period in excess of thirty days—has not been decided. The most frequently litigated issue, other than the constitutionality of the statute, has been whether the persons admittedly involved played a substantial enough role in conducting the business to be included as one of the five persons necessary to satisfy the requirement of § 1955(b)(1)(ii). See United States v. Harris, 460 F.2d 1041 (5th Cir., 1972) cert. den. 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed. 2d 130; United States v. Smaldone, *supra*; United States v. Meese, 479 F.2d 41 (8th Cir., 1973); United States v. Ceraso, 467 F.2d 653 (3rd Cir., 1972); United States v. Becker, 461 F. 2d 230 (2nd Cir., 1972); United States v. Riehl, 460 F.2d 454 (3rd Cir., 1972). After examining the legislative history of § 1955, the courts have uniformly concluded that almost anyone who works in the gambling enterprise counts to-

wards making up the minimum five. *See, e. g.,* United States v. Harris, *supra,* 460 F.2d at 1049; United States v. Ceraso, *supra,* 467 F.2d at 657; United States v. Becker, *supra,* 461 F.2d at 232. In reaching this conclusion the courts have not added a judicial gloss to the statute that answers the question raised here. This absence of authority is due in part to the relatively short time the statute has been on the books, but, if the reported cases are indicative, it is also due to the government's not having been concerned with gambling operations as close to the line as the one here.[4] Because the ambiguous definition of an illegal gambling business is unclarified by decisional law, we must look to the legislative history of § 1955 to see what it tells us about the relationship between (b)(1)(ii) and (iii).

### III.

Although the legislative history does not provide a definite answer to the question, it indicates that § 1955 was aimed at large scale gambling businesses. The following statement is typical:

"The intent of section 1511 and section 1955, below, is not to bring all illegal gambling activity within the control of the Federal Government, but to deal only with illegal gambling activities of major proportions. It is anticipated that cases in which their standards can be met will ordinarily involve business-type gambling operations of considerably greater magnitude than simply meet the minimum definitions. The provisions of this title do not apply to gambling that is sporadic or of insignificant monetary proportions. It is intended to reach only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern, and those corrupt State and local offi-

cials who make it possible for them to function."

H.R.Report 91–1549, 91st Cong. 2nd Sess., 2 U.S.Code Cong. and Administrative News, p. 4029 (1970).[5] "Congress has chosen to protect commerce and the instrumentalities of commerce not from all illegal gambling activities but from those it deems of major proportions. We may not substitute our judgment as to where the line might have been drawn." United States v. Riehl, *supra,* 460 F.2d at 458. In its effort to establish a federal structure to help curb large gambling businesses, Congress adopted the quantitative prerequisites to federal intervention contained in § 1955(b)(1)(ii) and (iii). To construe these provisions as urged by the government would not further the congressional purpose, for such a broad construction could subject almost any small gambling operation to federal regulation. This is clearly not the function of § 1955.

The quantitative requirements that the business be conducted by at least five persons and be in operation for a period in excess of thirty days furnish a more sensible standard for measuring substantiality if they are construed conjointly. Size and continuity, when found together in the proportions established by Congress, demonstrate that a gambling enterprise is of sufficient magnitude to warrant federal regulation. United States v. Kohne, 358 F. Supp. 1053, 1065 (W.D.Pa., 1973), aff'd without opinion, 485 F.2d 682 (3rd Cir., 1974); *see* United States v. Hunter, 478 F.2d 1019, 1021 (7th Cir., 1973). Viewed in light of the congressional intent to bring within federal criminal legislation not all gambling, but only that above a certain minimum level, a construction of the statute that fuses the size and continuity elements of the standard for determining what is an illegal gambling business seems most appropriate.

We find support for this conclusion in the portion of (b)(1)(iii) which provides an alternative to the continuity element. If a gambling business is conducted by five persons and "has a gross revenue of $2000 in any single day," § 1955(b)(1)(iii), then it is not necessary for the government to prove that the gambling business has operated in excess of thirty days. This alternative to proving continuity of operation serves the same purpose however. When combined with the size requirement of (b)(1)(ii), either alternative relates to the substantiality of the gambling business, thus satisfying the congressional purpose of drafting a federal criminal statute to prohibit large scale gambling.

In sum, the legislative history, as well as the internal structure of § 1955 indicate that Congress intended an illegal gambling business, as defined in (b)(1), to be one which operates with a minimum of five persons for a period in excess of thirty days. Construed in this manner the ambit of the statute is clear, and insignificant (by congressional standards) gambling activity will remain subject to regulation by state law without federal intervention unless such a business grows to meet the minimum gauge of substantiality established by the statute.

## IV.

Our analysis of the issue in this case is completed by referring to the familiar principle of statutory construction "that criminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed." Simpson v. Simpson, 490 F.2d 803, 809 (5th Cir., 1974). *See* Morissette v. United States, 342 U.S. 246, 263, 72 S. Ct. 240, 96 L.Ed. 288 (1952); United States v. Resnick, 299 U.S. 207, 209, 57 S.Ct. 126, 81 L.Ed. 127 (1936); United States v. Edwards, 458 F.2d 875, 880 (5th Cir., 1972), cert. den., Huie v. Unit-

---

5. See also 116 Cong.Rec. 585, 603–05, 606–07 (1970) (remarks of Senators McClellan, Al-

lot and Byrd); United States v. Harris, 460 F.2d 1041, 1045 n. 3 (5th Cir., 1972).

ed States, 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148; United States v. Fisher, 456 F.2d 1143 (10th Cir., 1972). In United States v. Boston & M. RR Co., 380 U.S. 157, 160, 85 S.Ct. 868, 870, 13 L.Ed.2d 728 (1965), the Supreme Court stated:

> "A criminal statute is to be construed strictly, not loosely. Such are the teachings of our cases from United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37, down to this day. Chief Justice Marshall said in that case:
>
>> 'The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.' *Id.*, p. 95.
>
> The fact that a particular activity may be within the same general classification and policy of those covered does not necessarily bring it within the ambit of the criminal prohibition. United States v. Weitzel, 246 U.S. 533, 38 S.Ct. 381, 62 L.Ed. 872."

Moreover, "one 'is not to be subjected to a penalty unless the words of the statute plainly impose it,' Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790. '[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.' United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 221–222, 73 S.Ct. 227, 97 L.Ed. 260." United States v. Campos-Serrano, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971). *See* Rewis v. United States, 401 U.S. 808, 811, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

These principles, when added to our conclusions regarding the structure and legislative history of § 1955, compel us to reject the government's attempt to fit the activity here within the definition of an illegal gambling business in § 1955(b)(1). Because the government failed to prove that the gambling business in the case at bar operated with five persons for a period in excess of thirty days, a violation of federal law was not established and the convictions must therefore be reversed.