887 So.2d 1017 (2004)
Lonnie MITCHELL
v.
STATE of Alabama.
CR-02-1658.
Court of Criminal Appeals of Alabama.
January 30, 2004.
Rehearing Denied March 19, 2004.
Henry L. Penick, Birmingham, for appellant.
Troy King and William H. Pryor, Jr., attys. gen., and Beth Slate Poe, asst. atty. gen., for appellee.
PER CURIAM.
AFFIRMED BY UNPUBLISHED MEMORANDUM.
McMILLAN, P.J., and BASCHAB, SHAW and WISE, JJ., concur. COBB, J., dissents, with opinion.
*1018 COBB, Judge, dissenting.
I respectfully dissent from the majority's unpublished memorandum affirming Lonnie Mitchell's conviction for disorderly conduct, a violation of § 13A-11-7(a)(1), Ala.Code 1975. The majority, in its unpublished memorandum, states the facts as follows:
"Lonnie Mitchell was convicted in the district court of Crenshaw County of disorderly conduct, § 13A-11-7, Ala.Code 1975. In pertinent part, the complaint filed against him charged the following:
"`On or about 4-9-2002, [Lonnie Mitchell] intentionally engage[d] in disorderly conduct with intent to cause [a] public inconvenience, annoyance or alarm or recklessly created a risk thereof by:
"`(XX) engaging in fighting or in violent, tumultuous or threatening behavior.
"`(XX) in a public place, to-wit: Sheriff's office, courthouse  using abusive or obscene language or gestures. To-wit: Shaggy bastard.
"`....
"`Also threatening behavior by telling Ronnie Davis that h[is] day would come and slamming his fist on the counter in violation of 13A-011-007.'
"(C.R. 7.)
"He appealed his conviction to the Crenshaw Circuit Court for a trial de novo. At the commencement of the trial, the prosecutor filed an information charging, in pertinent part, the following:
"`[Lonnie Mitchell did] intentionally engage in disorderly conduct with intent to cause public inconvenience, annoyance, or alarm, or recklessly created a risk thereof by: engaging in fighting or in violent, tumultuous or threatening behavior or in a public place, to-wit: Crenshaw County Sheriff's Office, Crenshaw County Courthouse, using abusive or obscene language or gestures, to-wit: calling Ronnie Davis a shaggy bastard, in violation of Section 13A-11-7, Code of Alabama 1975.'....
"(C.R. 20.)
"After a bench trial the trial court found that the evidence showed conduct that was `clearly ... threatening behavior which fits within the statute' and convicted Mitchell of disorderly conduct. (R. 55.) The circuit court imposed a fine of $250. Mitchell now appeals his conviction. We affirm.
"The facts are as follows: On April 9, 2002, the Crenshaw County Sheriff's Office executed a writ of execution on a tractor belonging to Mitchell. The tractor was located at Mitchell's residence. Mitchell was not present at the time the execution took place, and Chief Deputy Sheriff Ronnie Davis served the papers on Mitchell's 12-year-old daughter. When Mitchell returned home and discovered that his tractor had been seized, he went to the sheriff's office to complain about the events that had just transpired.
"Davis testified that he was in a side room of the sheriff's office about 12 feet from the `front desk,' when he heard Mitchell's voice. Davis stated that voices easily carried from one office to another in the sheriff's department and that he `usually' could hear conversations taking place at the front desk. (R. 13.) However, according to Davis, Mitchell was `talking loud.' (R. 9.) Davis stated that he entered the main room and saw Mitchell standing on the public side of the front desk. (R. 10.) Davis testified that Mitchell was `very irate' because he believed his tractor had been *1019 unjustly taken. (R. 10.) According to Davis, Mitchell `slammed his fist on the counter very loud,' and told Davis several times that `[Davis's] day would come.' (R. 10.) Davis stated that as Mitchell `stormed out of the office' he told Davis that he `would see [Davis] on the street' and called him a `shaggy-headed bastard.' (R. 10.) Davis further testified that he considered Mitchell's comments to be threats, but that he `didn't feel threatened at that time.' (R. 16.) Davis stated that based on Mitchell's conduct inside the sheriff's department, he followed Mitchell into the hallway of the courthouse and arrested him for disorderly conduct. At that time he noticed that Mitchell's 12-year-old daughter was also present.
"Paulette West, the wife of the sheriff and an employee in the sheriff's department, testified that she was working during the incident. West testified that Mitchell came in and asked her if he could speak with the sheriff. West told Mitchell that the sheriff was out and asked him if he would like to speak with `the chief' or `some of the deputies.' (R. 22.) West testified that as Chief Davis was entering the main office, Mitchell said `I will see [Davis].' (R. 22.)
"West testified that Mitchell `had some paperwork or something and he threw it down on the counter.... I could tell in his voice he was upset.' (R. 22.) According to West `[Mitchell] was agitated ... [and] was being loud.' (R. 25.) West stated that Mitchell was upset over the repossession of his tractor and after discussing the matter with Davis `he grabbed his stuff up and he had his little daughter with him and he said this is not over or something to that effect, and he looked at chief and called him a shaggy-headed bastard and said "I will get you" and out the door he went.' (R. 23.) West stated that Davis `remain[ed] calm throughout the whole ordeal.' (R. 24.)
"Andy Compton, a deputy sheriff inside the sheriff's office at the time of the incident, essentially testified that when he noticed Mitchell and Davis they were engaged in a `heated conversation' and `[t]hen the next thing I know I looked up and Mr. Mitchell was pointing his finger at Deputy Davis and says, "You're a shaggy-headed bastard and I'm going to get you." Then he leaves and goes out the door.' (R. 27.) According to Compton, Davis followed Mitchell out the door and arrested him in the hallway about 20 feet from the sheriff's office. Mitchell's daughter was also in the hallway.
"Mitchell testified that he went to the sheriff's office when he learned that someone from that office had taken his tractor after serving his 12-year-old daughter. It was his opinion that this was illegal. He asked to speak with the sheriff but he was not in. Davis spoke up and told Mitchell that he had repossessed the tractor. Mitchell stated that he asked Davis why his daughter had been served with papers. According to Mitchell, Davis responded that the papers were to be served even if they had to be left at the door. Mitchell stated that at that point he called Davis `a shaggy-headed bastard and walked out the door.' (R. 37.) He did not recall whether he had shaken his finger at Davis, but he denied making any other comments to Davis and stated that he did not threaten him. He did testify that his normal speaking voice is louder than normal because of a hearing impairment in his left ear.
"After hearing Mitchell's motion for a judgment of acquittal, the trial court, sitting ore tenus, found Mitchell's conduct to be `clearly' `threatening behavior' *1020 and adjudged him guilty of disorderly conduct. (R. 55.)"
On appeal, Mitchell contends that the trial court erred in denying his motion for a judgment of acquittal on the grounds that the state failed to present a prima facie case of disorderly conduct as charged. He presented three grounds in support of his contention:
1. Mitchell contends that "[a]busive or obscene language must be fighting words" and that his conduct did not constitute "fighting words" (Mitchell's brief at p. 4.);
2. Mitchell contends that there was insufficient evidence to convict him because, he says, the State did not prove that he was loud; and
3. Mitchell asserts that his "behavior was not threatening." (Mitchell's brief at p. 8.) According to Mitchell he was charged with "engag[ing] in `threatening behavior by telling Ronnie Davis that [his] day would come and slamming his fist on the counter.'" (Mitchell's brief at p. 8, quoting the complaint filed against him in the district court at C.R. 7.)
Section 13A-11-7(a)(1), Ala.Code 1975, defines disorderly conduct as:
"(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
"(1) Engages in fighting or in violent tumultuous or threatening behavior.
Mitchell's contentions as to the use of fighting words and loudness were properly disposed of by the majority because neither fighting words or loudness is an element of disorderly conduct as defined in § 13A-11-7(a)(1), Ala.Code 1975. However, I disagree with the majority's conclusion that the State established the element of "threatening behavior." I do not believe that there was evidence that Mitchell engaged in threatening behavior.
Section 13A-11-7(a)(1), Ala.Code 1975, prohibits engaging "in fighting or in violent tumultuous or threatening behavior." I believe that the prohibition against fighting and against behavior that is "threatening" conjoined with the prohibition against behavior that is "violent tumultuous"[1] suggests that the threatening behavior constituting disorderly conduct must rise to a level equal in unruliness to that of fighting or that it be "violent [,] tumultuous." Fighting suggests physical conflict. "Violent[,] tumultuous" suggest great physical or emotional disorder. See Powell v. State, 796 So.2d 404, 425 (Ala.Crim.App.1999)(probable cause to arrest the appellant based on his screaming profanities in public hallway while officers were trying to conduct capital murder investigation). Such was not the instant case.
Moreover, harassment, § 13A-11-8, Ala.Code 1975, a comparable offense against public order and safety, defines a threat as a communication, verbal or nonverbal, "made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety." § 13A-11-8(a)(2), Ala.Code 1975. I believe that only a slightly broader definition of "threat" applies to disorderly conduct. Because disorderly conduct is a crime against the public, a threat does not have to be made *1021 with the intent to carry it out, as with harassment; it need only recklessly create a risk of creating fear among those present. Here, there was no testimony indicating that Mitchell's behavior caused anyone to be in fear or that it recklessly created a risk that fear in anyone would be created. Even Davis, the direct object of Mitchell's threat, testified that although he considered Mitchell's comments to be threats, he "didn't feel threatened at that time" by Mitchell's conduct. (R. 16.)
Thus, I do not believe that the evidence presented in this case concerning Mitchell's threats amounted to the threatening behavior prohibited by the statute. Upset and angry individuals routinely enter a sheriff's office to vent their frustrations over actions taken by the sheriff's office or others, and they are not usually arrested. Here, Mitchell demonstrated poor judgment by angrily predicting that Chief Deputy Davis would get his day and by shaking his finger at Davis and slamming his fist onto the counter. Nevertheless, his conduct was not so provocative as to suggest great physical or emotional disorder that would be a risk of a public inconvenience. Construction of the statute in this way is consistent with the committee comments to § 13A-11-7, Ala.Code 1975, which states that the statute is "designed to protect the public from being annoyed, inconvenienced or alarmed," Commentary to § 13A-11-7, and it prevents prosecution at the "whim or caprice of an individual citizen." Sterling v. State, 701 So.2d 71, 74 (Ala.Crim.App.1997). Thus, while Mitchell's statements and conduct were inappropriate, especially so because they were displayed in front of his 12- year-old daughter, they by no stretch of the imagination were equal in nature to fighting or conduct that is violent or tumultuous, which I believe the disorderly conduct statute contemplates.
Therefore, I believe that the trial court's determination that Mitchell's behavior constituted a threat was without supporting evidence and is due to be reversed.
NOTES
[1] Section 13A-11-7(a)(1), Ala.Code 1975, reads: "Engages in fighting or in violent tumultuous or threatening behavior." A better reading of the statute would be "Engages in fighting or in violent [,] tumultuous[,] or threatening behavior." The present statute omits a comma after "violent" and after "tumultuous."