991 So.2d 691 (2008)
Ex parte Aurora Mercedes SOTO.
(In re Aurora Mercedes Soto
v.
State of Alabama).
1070118.
Supreme Court of Alabama.
April 11, 2008.
Nathan Johnson, Sheffield, for petitioner.
Submitted on petitioner's brief only.
BOLIN, Justice.
WRIT DENIED. NO OPINION.
SEE, LYONS, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
COBB, C.J., and MURDOCK, J., concur specially.
COBB, Chief Justice (concurring specially).
I agree with the majority that Aurora Mercedes Soto's petition for the writ of certiorari is due to be denied.
Soto's bare allegation that she "would... argue that the record in [her] case does not support a guilty finding on the charge of making a terrorist threat" fails to state or support any of the grounds for issuing the writ set forth in Rule 39(a)(1), Ala. R.App. P. Moreover, Soto did not address in her petition the finding by the *692 Court of Criminal Appeals, in its unpublished memorandum, that she failed to preserve her constitutional challenge to Ala. Code 1975, § 13A-10-15. See Rice v. English, 835 So.2d 157, 166 (Ala.2002) (noting that, in the state courts in Alabama, "[t]he `plain-error' rule, which dispenses with the necessity for error preservation, is confined to death-penalty cases"); D.W.L. v. State, 821 So.2d 246, 248 (Ala.Crim.App. 2001) ("`Even constitutional issues must first be correctly raised in the trial court before they will be considered on appeal.'" (quoting Hansen v. State, 598 So.2d 1, 2 (Ala.Crim.App.1991))). Soto's generic, nonspecific, and conclusory comment in the trial court was not sufficient to preserve her constitutional arguments for appeal. Cole v. State, 721 So.2d 255, 260 (Ala.Crim. App.1998) (holding that a motion to dismiss containing "general and nonspecific grounds" and "a general conclusory statement" challenging the constitutionality of a criminal statute was insufficient to support appellate review because "`[t]he trial court should not be made to cast about for reasons why a statute might be unconstitutional'" (quoting Perry v. State, 568 So.2d 339, 340 (Ala.Crim.App.1990))).
However, I write specially to note fundamental concerns with the application and interpretation of Ala.Code 1975, § 13A-10-15(a)(1)b raised by Soto's petition. Underlying Soto's petition is a challenge to the Court of Criminal Appeals' holding in its unpublished memorandum that the evidence supports a verdict that Soto made a terrorist threat because a rational fact-finder could find that Soto's actions constituted threats and that those threats disrupted school activities. Although this holding expresses the currently prevailing interpretation of Ala.Code 1975, § 13A-10-15(a)(1)b in our courts, I fundamentally disagree with this holding for two reasons. First, the manner in which the Court of Criminal Appeals' unpublished memorandum interprets the statute does not give effect to legislative intent as expressed by the plain wording of the statute. Second, the analysis used to reach this holding fails to apply an objective standard so as to limit the statute to punishing only that speech that may be appropriately regulated under the constitution.

I. The prevailing interpretation of Ala. Code 1975, § 13A-10-15(a)(1)b does not comport with the legislature's intent as expressed by the plain wording of the statute.
"The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. If possible, the intent of the legislature should be gathered from the language of the statute itself." Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991). "Where a statutory pronouncement is distinct and unequivocal, there remains no room for judicial construction and the clearly expressed intent of the legislature must be given effect." Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985) (citing Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534 (Ala.1983)).
However, if the statute is ambiguous or uncertain, a need for judicial construction arises. "[L]egislative intent ... may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained." Holladay, 466 So.2d at 960 (citing Shelton v. Wright, 439 So.2d 55 (Ala.1983)). Further, in determining how to properly construe a statute to effect its legislative intent, "the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another." Volkswagen, 579 So.2d at 1305.
*693 Additional rules of construction apply when the statute being construed is a criminal statute. Alabama Code 1975, § 13A-1-6, provides that "[a]ll provisions of [the Alabama Criminal Code] shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in Section 13A-1-3," one of which is "[t]o give fair warning of the nature of the conduct proscribed." § 13A-1-3(2).
As the Court of Criminal Appeals has accurately stated:
"`"`[A]mbiguous criminal statutes must be narrowly interpreted, in favor of the accused.' United States v. Herring, 933 F.2d 932, 937 (11th Cir.1991)[, vacated on rehearing, 977 F.2d 1435 (11th Cir. 1992)]. `[I]t is well established that criminal statutes should not be "extended by construction."' Ex parte Evers, 434 So.2d 813, 817 (Ala.1983). `"[C]riminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed."' United States v. Bridges, 493 F.2d 918, 922 (5th Cir. 1974)." Carroll [v. State], supra, 599 So.2d [1253] at 1264 [(Ala.Crim.App. 1992)].'"
Grace v. State, 899 So.2d 302, 308 (Ala. Crim.App.2004) (quoting State v. Brooks, 701 So.2d 56, 57-58 (Ala.Crim.App.1996)).
I believe § 13A-10-15(a)(1)b must be construed in accordance with the above authorities. I have grave concerns regarding whether the Court of Criminal Appeals' interpretation of § 13A-10-15(a)(1)b reflects the legislative intent in enacting the statute, in light of the above authorities.
The statute reads as follows:
"(a) A person commits the crime of making a terrorist threat when he or she threatens by any means to commit any crime of violence or to damage any property by doing any of the following:

"(1) Intentionally or recklessly:
"....
"b. Causing the disruption of school activities.

"....
"(2) With the intent to retaliate against any person who:[1]
"a. Attends a judicial or administrative proceeding as a witness or party or produces records, documents, or other objects in a judicial proceeding.
"b. Provides to a law enforcement officer, adult or juvenile probation officer, prosecuting attorney, or judge any information relating to the commission or possible commission of an offense under the laws of this state, of the United States, or a violation of conditions of bail, pretrial release, probation, or parole."
The Court of Criminal Appeals, however, has approached the statute as though it reads:
"A person commits the crime of making a terrorist threat when he or she makes a threat by any means to commit any crime of violence or to damage any property, which intentionally or recklessly *694 causes the disruption of school activities."
See, e.g., P.J.B. v. State, [Ms. CR-05-1026, Feb. 1, 2008] ___ So.2d ___, ___ (Ala. Crim.App.2008) (holding, in a case involving a student who, while riding a school bus, threatened to damage private property that had "no connection to the school," that a person commits the crime of making a terrorist threat when the making of a threat intentionally or recklessly significantly disrupts school activities).
Soto's indictment takes a similar approach; that indictment reads, in pertinent part, as follows:
"Aurora M. Soto ... threatened to commit a crime of violence, to-wit: threatened that if anything ever happened to her daughter at school she would go crazy and blow everybody up and/or that she was going to Mexico to hire a Bruha (witch) to put a spell on Mrs. Pounders (a teacher) and if that didn't work she would take care of Mrs. Pounders herself and or other threatening acts, which intentionally or recklessly caused the disruption of school activities in violation of Section 13A-10-15, of the Code of Alabama, against the peace and dignity of the State of Alabama."
(Emphasis added.)
Section 13A-10-15(a)(1)b, as actually worded, criminalizes only threats to commit a crime of violence by intentionally or recklessly disrupting school activities or threats to damage property by intentionally or recklessly disrupting school activities. Thus, under the statute, a threat to blow up the school on the first day of fall semester would be a "terrorist threat," even if the threat was made during summer vacation and the danger of the student's carrying out the threat was averted by authorities before school activities were actually disrupted.
Thus construed, § 13A-10-15(a)(1)b puts persons on notice that a threat to commit a crime of violence or to destroy property by disrupting school activities is a terrorist threat that is punishable by law. A reasonable person would expect that such a threat would be taken seriously by school officials and that it would result in significant disruption of the education process, the activation of law enforcement and emergency-response teams, and the disruption of the lives, peace, and security of students, parents, and educators. Further, in the light of recent tragedies in our nation in which students have made and then carried out such threats, a reasonable person should expect that making such a threat would be punishable by law.
I voice my concerns about the prevailing interpretation and application of § 13A-10-15(a)(1)b because incorrectly applying the statute vastly broadens the scope of the statute beyond what the legislature could have reasonably intended by the clear language of the statute and also makes the statute absurd and unpredictable in its application. The prevailing view, and the view reflected in decisions of the Court of Criminal Appeals, is that § 13A-10-15(a)(1)b criminalizes any threat to commit a crime of violence or to destroy property if the threat intentionally or recklessly causes a disruption of school activities. Thus, for example, a student's statement of his intent to ride around on Halloween night smashing pumpkins is a "terrorist threat" under this interpretation if the making of the threat recklessly causes a teacher to miss an important class to address the threat, or if the same student significantly disrupts a school assembly by taking over the podium to voice the smashing-pumpkin threat, but it is not a terrorist threat if school officials never find out about or react to the threat.
*695 The current interpretation by the courts, however, is not what the plain language of the statute says. Further, under this interpretation, the statute does not sufficiently put a person on notice that what he or she is about to say constitutes a crime, because the commission of the offense of making a terrorist threat in a school environment depends on the actual effect of the statement, such as whether and to what extent school officials react (or overreact) to a statement that has nothing to do with threatening to intentionally or recklessly disrupt school activities.

II. The prevailing interpretation of Ala. Code 1975, § 13A-10-15(a)(1)b, fails to satisfy due-process requirements and to apply the statute to prohibit only constitutionally unprotected speech.
Statutes punishing spoken words are subject to even more rigorous rules of construction than are other criminal statutes. Such statutes are valid if written or construed so as not to unconstitutionally infringe on the right to free speech. Even if the clear wording of an otherwise valid statute punishes constitutionally protected speech, we are bound to interpret that statute narrowly and to apply it in a manner that does not infringe on First Amendment rights. As this Court stated in Frolik v. State, 392 So.2d 846, 847 (Ala.1981):
"State statutes designed to punish spoken words can be upheld if, as authoritatively construed by the state courts, they are narrowly limited in their application to speech that is not protected under the First and Fourteenth Amendments. See, e.g., Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). See generally, Annot., 39 L.Ed.2d 925 (1975)."
Much of the speech the legislature intended § 13A-10-15(a)(1)b to prohibit is not protected by the First Amendment and is appropriately punishable.
"[T]he First Amendment ... permits a State to ban a `true threat.' Watts v. United States, 394 U.S. 705, 708 (1969) (per curiam) (internal quotation marks omitted); accord, R.A.V. v. City of St. Paul, [505 U.S. 377] at 388 [(1992)] (`[T]hreats of violence are outside the First Amendment'); Madsen v. Women's Health Center, Inc., 512 U.S. 753, 774 (1994); Schenck v. Pro-Choice Network of Western N.Y., 519 U.S. 357, 373 (1997).
"`True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. See Watts v. United States, supra, at 708 (`political hyberbole' is not a true threat); R.A.V. v. City of St. Paul, 505 U.S., at 388. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats `protect[s] individuals from the fear of violence' and `from the disruption that fear engenders,' in addition to protecting people `from the possibility that the threatened violence will occur.' Ibid."
Virginia v. Black, 538 U.S. 343, 359-60, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (emphasis added).
The United States Court of Appeals for the Eleventh Circuit has defined a "threat" as follows:
"A communication is a threat when `in its context [it] would "have a reasonable tendency to create apprehension that its originator will act according to its tenor."' In other words, the inquiry is whether there was `sufficient evidence to prove beyond a reasonable doubt that the defendant intentionally made the statement under such circumstances *696 that a reasonable person would construe them as a serious expression of an intention to inflict bodily harm....' Thus, the offending remarks must be measured by an objective standard....
"The fact-finder must look at the context in which the communication was made to determine if the communication would cause a reasonable person to construe it as a serious intention to inflict bodily harm."
United States v. Alaboud, 347 F.3d 1293, 1296-97 (11th Cir.2003) (citations and footnote omitted); cf. Mitchell v. State, 887 So.2d 1017, 1020 (Ala.Crim.App.2004) (Cobb, J., dissenting) (noting that Ala. Code 1975, § 13A-11-8(a)(2), "defines a threat as a communication, verbal or nonverbal, `made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety'"). Under an objective standard, the reactions of others to a statement are relevant to the jury's determination of whether a reasonable person would have construed the statement as a serious intention to inflict bodily harm. Alaboud, 347 F.3d at 1298.
An objective standard ensures against punishing citizens for protected utterances that, taken in context, cannot reasonably be interpreted as a "true threat." Cf. Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). Further, because an objective standard does not make the crime dependent on whether another person reacts unreasonably to a statement that, in context, was not intended to be a threat, such a standard comports with due process and with the principles of construction set forth in Ala.Code 1975, § 13A-1-6 and -3(2), supra, by ensuring that persons can reasonably predict whether the speech they are about to utter constitutes a crime.
As currently interpreted and applied, § 13A-10-15(a)(1)b criminalizes any threat to commit a crime of violence or to destroy property if the threat causes a "disruption" of school activities. This interpretation makes the commission of the crime entirely contingent on the subjective reaction (or overreaction) of school administrators, not on whether a reasonable person would construe a statement, taken in the context in which it was spoken, as a serious expression of an intention to inflict bodily harm or to destroy property. When subjectively construed, the statute includes within its compass protected speech and does not comport with due process because it criminalizes statements the speaker could not reasonably have predicted would have disrupted school activities.
I recognize that there are instances when speech that does not constitute a "true threat" may properly be punished under § 13A-10-15(a)(1)b. For example, under some circumstances, speech proscribed by the plain language of the statute amounts to words that, even if intended as a prank by an objective standard, incite immediate panic in the same way as does the act of falsely shouting "fire" in a crowded theater. See Schenck v. United States, 249 U.S. at 52, 39 S.Ct. 247 ("[T]he character of every act depends upon the circumstances in which it is done. The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." (citations omitted)). I believe that applying § 13A-10-15(a)(1)b to punish such speech does not violate due process or the First Amendment.
I am additionally concerned about the constitutionality of the statute because of several ambiguities inherent in the language chosen by those who drafted it. Those concerns, however, must wait for another day.

*697 III. Conclusion.
Although I agree that Soto's petition is due to be denied on procedural grounds, were it otherwise I could not conclude that the prevailing interpretation of Ala.Code 1975, § 13A-10-15(a)(1)b, would constitute a ground for denying the writ in this case.
MURDOCK, Justice (concurring specially).
Structurally, syntactically, and grammatically, § 13A-10-15(a), Ala.Code 1975, is nonsensical. Because the petition before us falls short of providing this Court with grounds upon which to issue a writ of certiorari, however, I concur in denying the writ.
NOTES
[1] Based on the facts set forth in the petition and in the Court of Criminal Appeals' unpublished memorandum, it does not appear that any of the evidence adduced at trial supports a finding that Soto made any threat with the requisite intent to retaliate against one of the persons described in subsection (a)(2) of the statute. Subsection (a)(2) makes no grammatical sense unless it is read in conjunction with subsection (a)(1). However, Soto did not raise this point as grounds for either her appeal or her petition, and there is no indication that she raised it in the trial court, either. Therefore, I do not address the implications of subsection (a)(2) in this special concurrence.