PER CURIAM.
The appellant, Jennifer Crawford, was convicted of theft of property in the second degree, a violation of § 13A-8-4(a), Ala. Code 1975, and was sentenced to 10 years in prison, which sentence was suspended and she was placed on three years’ supervised probation.[1] This appeal followed.
The State’s evidence tended to show that Rick Frees, an investigator with Target Corporation, which owns and operates discount retail stores, began investigating losses at Target discount stores in the Birmingham area when he received information from several shoplifters that he should look at the eBay Web site for J.S.P. Bargains. Frees found that the site listed numerous items similar to items stolen from various Target stores in the area. Police then conducted a series of undercover sales at Jim’s Super Pawn stores in the cities of Trussville, Moody, Huffman, and Birmingham, with the help of a confidential informant, M.B.
Det. Scott Salser of the Birmingham Police Department testified that on October 24, 2007, he and M.B. went to the Huffman store to pawn three new iPods— *612 portable media players — provided by Target. He said that he had his hand bandaged. When they entered the store, he said, several store employees, including Crawford, were behind the counter. They approached Crawford with the three new iPods, put the iPods on the counter, and told Crawford that they wanted to sell them. Crawford, he said, went to another employee, Bryan Stidham. When Crawford came back she said that the shop would give them $195 for the merchandise. Stidham went into the back and came back with the money while Crawford entered information into a computer. Det. Salser testified that while Crawford was working on the transaction M.B. asked how much they would pay for a 60-gigabyte iPod and if they could bring more new iPods in the next day.
The State played a recording of the transaction for the jury.[2] It shows the following: During the transaction M.B. asked Det. Salser about his hand. Det. Salser responded that it was better and that the bleeding had stopped. M.B. said: “I’m tired of stealing, man. I’m so tired. I’m ready to go home now.” M.B. then asked Det. Salser: “You’ll think twice before you wrestle them cases again, won’t you?” and Det. Salser responded: ‘Yep.” M.B. also said: “Man, s_, I need to get me one good lick about a f-g big screen t.v. and be through with it.” After Crawford told them how much they would get for the iPods, M.B. said: “That’s not bad, I guess,” and Det. Salser responded: “I cut my damn hand getting them things out of the case.”
Todd Posey of the Trussville Police Department testified that they executed search warrants at Jim’s Super Pawn stores in Moody, Trussville, and Huffman. At the Trussville store police discovered a room that contained new items that appeared to be for sale on the J.S.P. Bargains Internet Web site. They found shipping labels, packaging materials, and a folder of tickets for items that had been bought during the sting operations. The folder was labeled “items bought for eBay.”
Det. James Coleman of the Birmingham Police Department testified that he was the lead investigator on the case. He said that, during the sale involving Crawford, M.B., and Det. Salser, neither M.B. nor Det. Salser went up to Crawford and said that the iPods were stolen, but they implied that the iPods were stolen. Det. Coleman further testified that they executed a search warrant at the Huffman store and discovered two of the iPods Crawford had purchased in the back storage area of the store and the third iPod on the sales floor. He testified that according to the city code, pawnshops were supposed to provide information regarding the items they take in but that, in this case, they gave only two serial numbers. There was also testimony to the effect that state law required a pawnshop to hold merchandise for 15 days before putting it up for sale or transferring it to another location.
Crawford testified that in 2007 she was working at Jim’s Super Pawn part-time and that her primary responsibilities were to clean the store and merchandise. She occasionally handled transactions, she said, but she had to consult a manager on what items the store would buy. On the day M.B. and Det. Salser came in with the iPods, she said, she took the merchandise to Stidham, who was in the back, and he examined it and gave her a price. Craw *613 ford said that she went back and told them the price and then she went to the computer that was away from the counter to input the data from the transaction. Crawford testified that she did not hear M.B. or Det. Salser say anything about breaking into a case or anything to do with a case, that she did not hear anything that led her to believe that the iPods were stolen, that it was loud in the store, and that no one explicitly told her that the iPods were stolen. She said that when she put the number of the iPods in the computer she got mixed up and transposed the middle four digits of the serial numbers. Crawford testified that she would not knowingly take stolen property and that many customers brought in new property to pawn.
Crawford argues on appeal that the State failed to present sufficient evidence to support her conviction. Specifically, she argues that the State did not prove that Det. Salser and M.B. “explicitly” represented to her that the iPods were stolen; rather, she argues, they only implied that the items were stolen.
“In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 868 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State. A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust.”
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
“ ‘ “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches “a clear conclusion that the finding and judgment are wrong.” Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962). “The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court *614 that it was wrong and unjust.” Bridges v. State, 284 Ala. 412, 420, 225 So.2d 821 (1969)_ A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). “[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.” Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).’ Granger [v. State ], 473 So.2d [1137,] 1139 [ (Ala.Crim.App.1985) ].
“... ‘Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.’ White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). ‘Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.’ Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).”
White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989).
“[B]ecause intent is a state of mind, it is rarely susceptible of direct or positive proof. Instead, the element of intent must usually be inferred from the facts testified to by the witnesses together with the circumstances as developed by the evidence. Seaton v. State, 645 So.2d 341, 343 (Ala.Crim.App.1994) (quoting McCord v. State, 501 So.2d 520, 528-29 (Ala.Crim.App.1986)).... Finally, ‘ “[t]he intent of a defendant at the time of the offense is a jury question.” ’ C.G. v. State, 841 So.2d 281, 291 (Ala.Crim.App.2001), aff'd, 841 So.2d 292 (Ala.2002), quoting Downing v. State, 620 So.2d 983, 985 (Ala.Crim.App.1993).”
Pilley v. State, 930 So.2d 550, 564-65 (Ala. Crim.App.2005).
Section 13A-8-2, Ala.Code 1975, states:
“A person commits the crime of theft of property if he or she:
[[Image here]]
“(3) Knowingly obtains or exerts control over property in the custody of a law enforcement agency which was explicitly represented to the person by an agent of the law enforcement agency as being stolen.”
(Emphasis added.)[3] Section 13A-8-4(a), Ala.Code 1975, provides that theft of property in the second degree is the theft of property “which exceeds five hundred dollars ($500) in value but does not exceed two thousand five hundred dollars ($2,500) in value, and which is not taken from the person of another.”
Alabama has yet to address the extent of evidence necessary to satisfy the “explicit” requirement of § 13A-8-2(3), Ala. Code 1975. In order to sustain a conviction for theft of property, the State had to prove that Crawford “[kjnowingly obtain[ed] or exert[ed] control over property in the custody of a law enforcement agency which was explicitly represented to [her] by an agent of the law enforcement agency as being stolen.” § 13A-8-2(3), Ala.Code 1975 (emphasis added).
It is a well established principle of statutory interpretation that “[w]here the *615 meaning of the plain language of the statute is clear, it must be construed according to its plain language.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1998). “Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.” Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).
“ ‘ “[Criminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed.” ’ United States v. Bridges, 493 F.2d 918, 922 (5th Cir.1974).
“‘In United States v. Boston & M. RR Co., 380 U.S. 157, 85 S.Ct. 868, 870, 13 L.Ed.2d 728 (1965), the Supreme Court stated:
““‘A criminal statute is to be construed strictly, not loosely. Such are the teachings of our cases from United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37 [(1820)], down to this day. Chief Justice Marshall said in that case:
“ ‘ “ ‘The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.’ Id., p. 95.
“ ‘ “The fact that a particular activity may be within the same general classification and policy of those covered does not necessarily bring it within the ambit of the criminal prohibition. United States v. Weitzel, 246 U.S. 533, 38 S.Ct. 381, 62 L.Ed. 872 [ (1918) ].”
“ ‘Moreover, “one ‘is not to be subjected to a penalty unless the words of the statute plainly impose it,’ Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 [ (1905) ]. ‘[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.’ United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221-222, 73 S.Ct. 227, 229-230, 97 L.Ed. 260 [ (1952) ].” United States v. Campos-Serrano, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971).’
“Bridges, 493 F.2d at 923.
“ “Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning.’ Alabama Farm Bureau Mut. Casualty Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). The general rule of construction for the provisions of the Alabama Criminal Code is found in Ala. Code 1975, § 13A-1-6: ‘All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in section 13A-1-3.’ Among the purposes stated in § 13A-1-4 is that found in subsection (2): ‘To give fair warning of the nature of the conduct proscribed.’ ”
Carroll v. State, 599 So.2d 1253, 1264-65 (Ala.Crim.App.1992).
The term “explicit” is defined as “fully revealed or expressed without vagueness, implication or ambiguity: leaving no question as to meaning or intent.” Merriam-Webster’s Collegiate Dictionary 441 (11th ed.2003).[4] The use of the term *616 “explicitly” in § 18A-8-2(3) is not ambiguous. When the plain, ordinary, and commonly understood meaning is applied to the language in § 13A-8-2(S), it is clear that the legislature intended a person charged under this particular provision of the theft statute have knowledge, beyond that which could be implied, that the property in the custody of the law-enforcement agency was in fact stolen.
Here, the evidence presented by the State established that Det. Salser and M.B. did not explicitly represent to Crawford that the iPods they were seeking to pawn had been stolen. Indeed, Det. Coleman, the lead investigator in this case, admitted as much. Coleman testified that the plan was for Det. Salser and an informant to go into the pawnshop, explain that the property was stolen, and see if the pawnshop would take the property. However, he admitted that during the sale involving Crawford, M.B., and Det. Salser, neither M.B. nor Det. Salser said that the iPods were stolen but merely implied that they were stolen. The fact that Det. Sal-ser and M.B. believed that Crawford “had to have heard” what was said during their conversation because of her close proximity to them simply fails to establish an “explicit representation” as required by § 13A-8-2(3), Ala. Code 1975.
The legislature’s use of the term “explicitly” in the statute connotes a more stringent level of proof than normally required by law. Had the legislature intended to require a lesser degree of proof, it would not have used such a precise term as “explicitly.” Although the State presented evidence indicating that Crawford may have had reason to believe that the iPods were stolen, the evidence was insufficient to support a conviction under § 13A-8-2(3), Ala.Code 1975, because no explicit representations were made to Crawford that the iPods were in fact stolen.[5]
For the foregoing reasons, Crawford’s conviction for theft of property in the second degree is due to be set aside and a judgment rendered in her favor.
REVERSED AND JUDGMENT RENDERED.
WELCH, P.J., and WINDOM, KELLUM, BURKE, and JOINER, JJ., concur.

. Crawford was also indicted for receiving stolen property in the second degree; however, the circuit court dismissed that charge before the case was submitted to the jury.

. Pursuant to Rule 13, Ala. R.App. P., we requested the audio recording of the transaction.

. Section 13A-8-2(3), Ala.Code 1975, was added when the theft statute was amended effective September 1, 2003. See Act No. 2003-355, Ala. Acts 2003.

. Although the term "explicit” is defined in earlier editions of Black’s Law Dictionary, a *616 definition for "explicit” is not included in the current edition, which is the eighth edition. See Black's Law Dictionary 519 (5th ed.1979) ("explicit" defined as "[n]ot obscure or ambiguous; having no disguised meaning or reservation; clear in understanding”).

. Cf. Flowers v. State, 843 S.W.2d 38 (Tex.Crim.App.1992) (holding that an officer's slang statement that the equipment was "ripped off” was sufficient to prove an explicit representation under a similar Texas theft statute).